

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 16, 2022

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: <u>United States v. James Bradley and Arwa Muthana</u>, 21 Cr. 277 (PAE)

Dear Judge Engelmayer:

  The Government respectfully submits this letter, in accordance with the Court's instruction at the March 10 and April 12, 2022 status conferences in this matter, outlining the relevant legal framework under the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3. This letter provides a summary of (1) CIPA's statutory framework as it pertains to pretrial filings and (2) the different types of CIPA motions that may be filed in this case. For its part, the Government today is filing an *ex parte* motion pursuant to Section 4 of CIPA seeking to withhold from discovery, substitute, and/or summarize certain classified information. At an appropriate later stage of the case, if the defense files a notice pursuant to Section 5 of CIPA related to previously produced classified discovery in this case, the Government intends to respond to any such notice under CIPA Section 6. These provisions and the applicable legal standards governing CIPA motions are discussed in further detail below.[1]

<h3 style="text-align:center">Overview of the CIPA Statutory Framework</h3>

  CIPA governs the discovery of classified information in federal criminal cases. *See United States v. Abu-Jihaad*, 630 F.3d 102, 140-41 (2d Cir. 2010). Congress enacted CIPA to enable the Government to fulfill its duty to protect national security information, while simultaneously

---

[1] The Government notes, in light of the colloquy at the March 10 and April 12, 2022 conferences, that the Government's approach in this case with respect to the nature of any public filings relating to CIPA motion practice is consistent with the approach followed in other cases, including a recent case before this Court involving classified litigation, *United States v. Alimehmeti*, No. 16 Cr. 398 (PAE) (S.D.N.Y.). For example, in *Alimehmeti*, as relevant to the Government's CIPA Section 4 motion, the Government (1) filed a letter, similar to the instant letter, outlining the relevant legal framework under CIPA, *see Alimehmeti*, ECF No. 25; (2) filed a notice of the fact of the submission of its Section 4 motion, *see id.*, ECF No. 40; and (3) filed a memorandum opposing the defendant's motion seeking access to the Government's *ex parte* Section 4 submission, *see id.*, ECF No. 41 (the Government would be prepared to file a memorandum opposing any such defense request in this case; the applicable legal principles are largely set forth below, which make clear that the Government's Section 4 motion is properly reviewed *ex parte* and *in camera*).

complying with its discovery obligations in federal criminal prosecutions. *See* S. Rep. No. 96-823, 96th Cong., 2d Sess., at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4296; *see also United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (stating that CIPA's fundamental purpose is to "'harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest.'" (quoting *United States v. Wilson*, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983) (Weinfeld, J.)); *see also, e.g.*, *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (noting that CIPA "evidence[s] Congress's intent to prevent classified information from unnecessary disclosure at any stage of a criminal trial," while simultaneously ensuring that a defendant's right to present a defense is not compromised).

CIPA does not alter the defendant's substantive rights or the Government's discovery obligations. *See United States v. Anderson*, 872 F.2d 1508, 1514 (11th Cir. 1989) (collecting cases). Rather, CIPA creates a procedural framework that permits the Court to rule, before trial, on questions related to classified materials. This framework helps to prevent unnecessary or inadvertent disclosure of classified information, and allows the Government to assess the national security "costs" associated with pursuing a certain course in its criminal prosecution. *See, e.g.*, *Anderson*, 872 F.2d at 1514; *United States v. Collins*, 720 F.2d 1195, 1197 (11th Cir. 1983).

An overview of certain potentially relevant CIPA provisions follows, including the Section 4 framework applicable to the *ex parte* motion that the Government is filing today:

Section 2: Pretrial Conference

Section 2 of CIPA provides that the Court may hold a conference at any time after an indictment has been filed to consider matters relating to classified information. *See* 18 U.S.C. app. 3 § 2. A court may elect to hold a Section 2 conference with both parties, or *ex parte* with either the Government or the defense, to address classified matters. *See United States v. Abu-Jihaad*, No. 07 Cr. 57 (MRK), 2007 WL 2972623, at *1 (D. Conn. Oct. 11, 2007) (collecting cases in which "numerous courts have upheld the propriety of *ex parte*, *in camera* proceedings in cases involving classified information"). The Government is available at the Court's convenience for an *ex parte* Section 2 conference relating to the Section 4 motion should the Court have any questions regarding the submission. *See Abu-Jihaad*, 630 F.3d at 143 (proper for district court to conduct *in camera*, *ex parte* proceedings addressing Section 4 motion).

Section 3: General Protective Order

Section 3 of CIPA provides for an appropriate protective order to be entered to protect against the unauthorized dissemination of classified information disclosed to the defense in connection with the prosecution. *See* 18 U.S.C. app. 3 § 3.

Section 4: Discovery and Protective Orders

Section 4 of CIPA outlines the procedures to be followed when the Government seeks to limit the information it is providing to the defense in the context of the discovery process. Among its provisions, CIPA authorizes a court to deny or modify discovery of classified information that ordinarily would be produced pursuant to Federal Rule of Criminal Procedure 16 or otherwise. Specifically, Section 4 of CIPA provides that "upon a sufficient showing," a court may "authorize

the United States to delete specified items of classified information from [discovery], . . . to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. app. 3 § 4. This provision "clarifies district courts' powers under Rule 16(d)(1) to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security." *United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009) (internal quotation marks omitted); *see also* Fed. R. Crim. P. 16(d)(1) (district courts may "for good cause, deny . . . discovery or inspection, or grant other appropriate relief").

The Second Circuit has explained that, in analyzing a Section 4 motion, a district court should engage in a three-stage analysis. *See United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008). First, the Court must determine whether the classified information at issue is discoverable. *See id.* at 80. Second, the Court should assess whether the Government has properly invoked the need to protect against the disclosure of classified information, which the Second Circuit determined is sourced in the common-law privilege against the disclosure of state secrets. *See id.* at 78. The Second Circuit explained that the state secrets "privilege 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'" *Id.* at 78-79 (quoting *Zuckerbraum v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991)). That privilege, the *Aref* court observed, can only be invoked by the "head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* at 80 (internal citations and quotation marks omitted); *see United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022). As a consequence, in cases in this Circuit involving the equities of the Department of Justice in classified information, any such claim of privilege must personally be asserted by the Attorney General, typically in the form of a declaration.

The third stage in the above-described analysis is the Court's determination of whether, if it has been invoked, the Government's common-law privilege must give way. *See Aref*, 533 F.3d at 80. This includes consideration of whether the classified material that the Government proposes to delete from discovery (or to produce in summary form) is both "relevant and helpful" to the defense. *See id.* at 79-80. The "relevant and helpful" standard was first articulated by the Supreme Court in *United States v. Roviaro*, 353 U.S. 53 (1957), a case that concerned the privilege that permits the Government, in certain circumstances, to withhold the identity of its informants.

Section 5: Notice from the Defendant

Pursuant to Section 5 of CIPA, a defendant who reasonably expects to disclose (or cause the disclosure of) classified information at any stage of a prosecution is required to file notice of such intention. *See* 18 U.S.C. app. 3 § 5(a). Such information might include classified information that the defense has learned through the discovery process, or classified information that is known to the defendant himself. The Section 5 notice must "include a brief description of the classified information," *id.*, and "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense." *Collins*, 720 F.2d at 1199. A defendant must provide any Section 5 notice "within the time specified by the court or, where no time is specified, within thirty days prior to trial." 18 U.S.C. app. 3 § 5(a).

If the defendant fails to provide a timely and adequately detailed notice sufficiently in advance of trial to permit the implementation of CIPA procedures, Section 5(b) provides for preclusion. *See United States v. Badia*, 827 F.2d 1458, 1465 (11th Cir. 1987). Similarly, if the

defense attempts to disclose at trial classified information which is not described in their Section 5(a) notice, preclusion is the appropriate remedy prescribed by Section 5(b). *See United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985) ("A defendant is forbidden from disclosing any such information absent the giving of notice.").

In this case, the Government has produced classified discovery to cleared counsel for both defendants. Neither defendant, to date, has indicated that he or she anticipates filing notice under Section 5 of CIPA.

Section 6: Hearings and Substitutions

If the defense gives Section 5 notice of intention to disclose (or cause the disclosure of) classified information, the Government may request the Court to conduct a hearing to make determinations as to the use, relevance, or admissibility of the classified information at trial or a pretrial proceeding. 18 U.S.C. app. 3 § 6(a). Section 6 also requires that the Court hold any such hearing *in camera* "if the Attorney General certifies to the Court in such petition that a public proceeding may result in the disclosure of classified information." *Id.* At the hearing, the defense must proffer why the classified information that they seek to disclose is relevant, while the Government is given an opportunity to challenge the request on various grounds—including, for example, the materiality and admissibility of the proposed information. *See, e.g.*, *United States v. Cardoen*, 898 F. Supp. 1563, 1581 (S.D. Fla. 1995); *United States v. Rezaq*, 899 F. Supp. 697, 704 (D.D.C. 1995).

If the Court grants a defendant's request to disclose classified information, the Government may then seek Court approval for alternative means of disclosure—including an unclassified statement admitting the facts contained in the classified materials, or an unclassified summary of the facts contained in the classified materials. *See* 18 U.S.C. app. 3 § 6(c)(l). CIPA directs that the Court shall grant such an application from the Government if the Court "finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *Id.*

If the classified information cannot be disclosed in a manner that provides the "defendant with substantially the same ability to make his defense" as would disclosure of the classified information, 18 U.S.C. app. 3 § 6(c), and the Government is unwilling to disclose such information, then the Court may take appropriate action, including making a finding against the Government on any issue as to which the classified information is probative, striking testimony, barring the use of certain testimony or even dismissing the indictment. 18 U.S.C. app. 3 § 6(e).

Section 7: Interlocutory Appeals

CIPA Section 7 gives the Government the right to pursue an interlocutory appeal of an adverse CIPA decision. *See* 18 U.S.C. app. 3 § 7.

## **CIPA Section 4 Filings Are Properly Made *Ex Parte* and *In Camera***

CIPA expressly authorizes Section 4 filings to be made *ex parte*, *in camera*. *See* 18 U.S.C. app. 3 § 4 ("The court may permit the United States to make a [Section 4] request . . . in the form of a written statement to be inspected by the court alone."). Section 4 additionally provides that, "[i]f the court enters an order granting relief following such an ex parte showing, the entire text of

the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal." *Id.* Congress viewed the *ex parte* nature of a Section 4 proceeding as important. As the record of the House of Representatives put it, "since the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." H.R. Rep. No. 96-831, pt. 1, at 27 n.22 (1980); *see also* Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e) ("[I]t would defeat the purpose of the protective order if the government were required to make its showing in open court. The problem arises in its most extreme form where matters of national security are involved.").[2]

Proceeding *ex parte* and *in camera* makes sense in light of CIPA's purpose. First, a Government motion pursuant to Section 4 is made to delete or summarize certain materials so that the Government will not need to reveal those materials. If the Government's motion to delete or summarize were not reviewed *in camera* and *ex parte*, the motion practice would itself reveal the very information—and commonly, the sensitive technique or techniques used to obtain that information—that the Government seeks ultimately to shield in the interest of national security. *See, e.g.*, *Aref*, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)); *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008) ("The right that section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view."); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) ("The legislative history of [CIPA] explains that because the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rule.").

Second, CIPA Section 4 motions concern the question of what the Government will turn over during the discovery process. Such questions are usually answered solely by Government attorneys with no Court involvement. When the Government moves for the Court to become involved in assessing whether certain materials must be produced, it is entirely routine for that judicial assessment to be handled *ex parte*, *in camera*. As the Court of Appeals for the D.C. Circuit has noted, *ex parte* CIPA practice is "close[ly] analog[ous]" to more familiar *ex parte* practices:

> When a court (rather than the prosecutor alone, as is ordinarily the case) reviews evidence *in camera* to determine whether it constitutes a witness statement subject to disclosure under the Jencks Act, 18 U.S.C. § 3500(b), or exculpatory material subject to disclosure under *Brady*, the defendant is likewise not entitled to access to any of the evidence reviewed by the court . . . to assist in his argument that it should be disclosed.

---

[2] Similarly, Rule 16(d)(l) contemplates the same procedure, stating: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*."

*United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006) (citations and internal quotation marks omitted).

In accordance with the foregoing principles, courts in this Circuit and elsewhere routinely permit the Government to make Section 4 filings *ex parte* and *in camera*, regardless of whether one or more defense counsel has or could obtain an appropriate security clearance. *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 143 (rejecting argument that Government's *ex parte* and *in camera* submissions were improper (citing *Aref*, 533 F.3d at 81)); *Abu-Jihaad*, 2007 WL 2972623, at *1 (collecting numerous cases), *aff'd*, *Abu-Jihaad*, 630 F.3d 102; *United States v. Liu*, No. 19 Cr. 804 (VEC), 2021 WL 3374535, at *4 (S.DN.Y. Aug. 3, 2021) (noting that *ex parte* consideration was appropriate and that an argument to the contrary "is foreclosed by CIPA itself and has been rejected repeatedly by the Second Circuit and other courts to consider the issue"); *United States v. Saipov*, No. 17 Cr. 722 (VSB) (S.D.N.Y. Oct. 29, 2019), ECF No. 212 ("Courts routinely permit the Government to proceed *ex parte* when the substance of the classified information that the Government seeks to [] with[o]ld from discovery is explicitly discussed in the relevant motion.") (collecting cases); *accord* Opinion & Order, *Alimehmeti*, ECF No. 54, May 8, 2017 (denying defense motion for access to Government's *ex parte* Section 4 motion); Order, *United States v. Ashe*, No. 15 Cr. 706 (VSB) (S.D.N.Y. Sept. 14, 2016), ECF No. 272 (same); Transcript, *United States v. Jones*, No. 16 Cr. 19 (PGG) (S.D.N.Y. Aug. 16, 2016), ECF No. 30 (same); Memorandum Decision and Order, *United States v. Mostafa*, No. 04 Cr. 356 (KBF) (S.D.N.Y Jan. 17, 2014), ECF No. 233 (same); *United States v. Ahmad*, Nos. 04 Cr. 301 (JCH), 06 Cr. 194 (JCH), 2013 WL 1899792, at *3 (D. Conn. May 1, 2013) ("Because the court finds that, in accordance with section 4, the classified information is not discoverable, a clearance would not have entitled the defense to see any of the information." (internal quotation marks omitted)); *United States v. Ahmed*, No. 10 Cr. 131 (PKC), 2011 WL 4915005, at *6 (S.D.N.Y. Sept. 23, 2011) (ruling, over objection of cleared defense counsel, that *ex parte*, *in camera* consideration of the Government's Section 4 motion was proper); *Abu-Jihaad*, 2007 WL 2972623, at *2 (holding that a Section 4 motion can be made *ex parte* and noting that "[i]f . . . the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless whether his counsel is willing to submit to security clearance procedures"); *United States v. Libby*, 429 F. Supp. 2d 18, 25 (S.D.N.Y. 2006) (permitting the Government to file *ex parte* Section 4 motions—even though the defendant and his counsel held appropriate security clearances—upon a showing in the Government's filing that the defense did not have the requisite "need-to-know").

Hon. Paul A. Engelmayer  Page 7
May 16, 2022

      Consistent with this long line of precedent, and for the reasons further explained in the Government's Section 4 brief, the Government submits that its Section 4 motion should be considered *ex parte* and *in camera*.

      Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     /s/
Andrew J. DeFilippis
Kaylan Lasky
Jason A. Richman
Assistant United States Attorneys
(212) 637-2231 / 2315 / 2589

cc: Defense Counsel (by ECF)