

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

July 25, 2022

<u>Via Email and ECF</u>

| | |
|---|---|
| Richard Ma, Esq. | Anthony Cecutti, Esq. |
| The Law Offices of Ma and Park | Law Office of Anthony Cecutti |
| 20 Vesey Street, Suite 400 | 217 Broadway, Suite 707 |
| New York, New York 10007 | New York, New York 10007 |
| | |
| Christine Delince, Esq. | Karloff Commissiong, Esq. |
| The Law Offices of Onadowan & Delince, PLLC | Adams & Commissiong LLP |
| 116 West 23rd Street, Fifth Floor | 65 Broadway, Suite 1603 |
| New York, New York 10011 | New York, New York 10006 |

Re:    <u>United States</u> v. <u>James Bradley, et al.</u>, 21 Cr. 277 (PAE)

Dear Counsel:

Pursuant to the Court's prior scheduling order in this matter, Dkt. 70, the Government hereby provides preliminary notice to the Court and the defense that it intends to offer the following evidence at trial as direct evidence of the charged offenses and, in the alternative, as evidence of other crimes, wrongs, or acts pursuant to Fed. R. Evid. 404(b). The Government reserves the right to amend and supplement this notice closer to trial, which is scheduled for November 11, 2022.

### 1. Bradley's Conduct and Communications with Delowar Hossain

The Government intends to offer evidence of defendant James Bradley's conduct and communications relating to his plans in 2019 to travel overseas to support the Taliban. Specifically, in or about early 2019, Bradley and another New York-based individual, Delowar Hossain, discussed a plan to travel to Afghanistan in order to join the Taliban and attack American soldiers serving in Afghanistan. In or about March or April 2019, Bradley decided not to travel with Hossain. Hossain later attempted to conduct such travel, was arrested, and convicted at trial in this District of terrorism offenses. *See United States v. Delowar Hossain*, 19 Cr. 606 (SHS) (S.D.N.Y.).

The Government's evidence at trial in this case will include, but not be limited to, recorded conversations and messages between and among Bradley, Hossain, and two confidential human sources ("CHSes") concerning Bradley's support for terrorism and the Taliban, the details of the group's plans for traveling overseas, the equipment and supplies that the group acquired to execute the plan, and the steps that the group undertook to avoid detection. *See* discovery produced on July

13, 2021. This evidence is admissible as direct evidence of the charged offenses because it reflects the process of Bradley's radicalization and evolving desire to support terrorist acts, which culminated in the instant offense conduct.

Alternatively, this evidence is admissible proof of "other crimes, wrongs, or acts" pursuant to Rule 404(b), as it tends to prove the defendants' "motive . . . intent, preparation, [and] plan" pursuant to Rule 404(b). Such evidence is admissible because it would, among other things, support the Government's efforts to prove (1) that Bradley's "motive" in committing the instant offense conduct included his support of violent extremism (including the Taliban), his resentment towards U.S. military personnel, and his desire to harm such personnel; (2) that Bradley's "intent," beginning in at least 2019, was to support terrorists and terrorist groups, including terrorists overseas; (3) that Bradley undertook extensive "preparation[s]" to support terrorism, including by discussing and planning his travel with Hossain and the CHSes; and (4) that Bradley's statements and actions in coordination with Hossain were part of the same broader "plan" that Bradley ultimately executed with Muthana in committing the instant offenses, namely, a plan for Bradley to travel and support terrorists (including at first the Taliban, and then ISIS). In short, Bradley's conduct relating to the Hossain case is admissible because it is intertwined with the instant offense conduct and reflects a plan that Bradley ultimately executed with Muthana based on his motive and intent to support terrorists and harm the United States.

### 2. Bradley's Discussions with an NYPD Undercover Officer ("UC") Regarding His Desire to Carry Out a Terrorist Attack at the U.S. Military Academy

The Government also intends to offer consensual recordings by and/or testimony from a New York City Police Department ("NYPD") undercover officer ("UC-1") and other evidence reflecting Bradley's desire to carry out a terrorist attack in the United States, including at the United States Military Academy at West Point. For example, in numerous conversations with UC-1 between 2020 and 2021, Bradley discussed his desire to "do something" in the United States and discussed, among other things, obtaining a truck and amassing weapons to use in such an attack. Bradley repeatedly referred to this potential attack as his "Plan B," which he stated he might carry out if he could not travel overseas (his "Plan A"). *See, e.g.*, USAO_000115. Again, this evidence is admissible as direct evidence of the charged offenses because it was part of the same communications and conduct that led Bradley to attempt to travel overseas with Muthana to support ISIS.

In the alternative, however, the Government will also offer such evidence to prove the defendants' "motive . . . intent, [and] plan" pursuant to Rule 404(b). Such evidence is admissible because it would prove, among other things, (1) that one of Bradley's "motive[s]" in committing the instant offenses was to harm U.S. military personnel by carrying out a terrorist attack; (2) Bradley's "intent" was to harm such military personnel either by traveling overseas or by committing an attack in the United States; and (3) that Bradley's statements and actions on this subject were part of the same "plan[s]" as the charged offense conduct, insofar as Bradley specifically referred to his attempted travel overseas as "Plan A" and his potential terrorist attack inside the United States as "Plan B." Accordingly, this evidence is admissible because it will explain and provide context for Bradley's broader motive, intent, and plan in seeking to travel overseas to join ISIS.

### 3. Bradley's and Muthana's Accessing, Posting, and Distributing Extremist Online Content Prior to Their Attempted Travel

The Government also intends to offer evidence proving that in the months and years prior to their arrests, Bradley and Muthana accessed, downloaded, and/or posted violent extremist

content obtained via the Internet, including materials indicative of their support for ISIS. This evidence will include, but not be limited to:

- photographs and videos that Bradley posted on social media in 2020, including images of ISIS fighters, Usama Bin Laden, and terrorist attacks. *See, e.g.*, USAO_0140198; USAO_0140202; USAO_0141217.
- photographs and videos that Bradley sent to UC-1 in 2020, including videos of ISIS fighters, a 2020 stabbing attack against an NYPD officer, and extremists shooting a uniformed soldier. *See, e.g.*, USAO_001825; USAO_001832 - USAO_001833.
- photographs and videos that the FBI seized from Muthana's cellphone pursuant to a search warrant following her arrest, including images of an ISIS flag with Arabic writing, a gun shop, firearms, ISIS propaganda, and quotations of the deceased extremist preacher and former Al Qa'ida in the Arabian Peninsula member Anwar al-Awlaki, including, for example, a copy of the cover of a book authored by al-Awlaki and titled "44 Ways to Support Jihad." *See, e.g.*, USAO_0140229; USAO_0140231.

This evidence is admissible as direct evidence of the charged offenses because it reflects the defendants' radicalization prior to their attempted travel overseas to support ISIS.

In the alternative, however, the Government will also offer such evidence to prove the defendants' "motive . . . intent[,] plan," and "knowledge" pursuant to Rule 404(b). Such evidence is admissible because it would prove, among other things, (1) that both defendants' "motive[s]" in attempting to board a cargo ship in New Jersey was – consistent with their online activities – to support ISIS overseas and advance its violent mission; (2) that the defendants did, in fact, "inten[d]" to support ISIS, as evidenced by their own prior efforts to access extremist materials celebrating ISIS and similar groups; (3) that they shared an affinity for ISIS and its propaganda, which helped to fuel their joint "plan" to travel overseas; and (4) that they possessed "knowledge" of ISIS's goals and brutal tactics, including its commission of terrorist attacks and use of online propaganda to recruit followers. In sum, this evidence is admissible because it will prove that the defendants' online activities reflect, and are fully consistent with, their overarching plans, motive, and intent to support ISIS.

### 4. Muthana's Communications with an FBI CHS Regarding Her Extremist Views, Desire to Marry an Extremist, and Plans to Support ISIS

The Government also intends to offer communications (including social media messages and consensually-recorded conversations) that Muthana exchanged with an FBI CHS and others in 2020 and 2021 reflecting her extremist views, her desire to marry an ISIS member, and plans to travel overseas to support ISIS. For example, this evidence includes, but is not limited to:

- On June 13, 2020, Muthana stated to an FBI CHS via social media that, among other things, she lived in the "land of the kuffar [disbelievers]," and wanted to complete an online form associated with Anwar al-Awlaki used for the purposes of match-making for marriage. *See* USAO_009215 - USAO_009229.
- On the same date, Muthana told the CHS she was interested in marrying a mujahid (fighter) and added "there r ways to say it I guess…if you know what I mean. . . someone who wants to do hijra [travel for religious purposes] and loan Allah a goodly loan," after which Muthana sent the above-referenced marriage form to the CHS. *See id.*
- On September 23, 2020, Muthana met the CHS in person, during which Muthana,

- among other things, informed the CHS that her sister had conducted "hijra" and praised her sister as steadfast and strong in her faith for traveling to Syria. (Muthana's sister, Hoda, traveled to Syria in November 2014 to join ISIS and marry an ISIS fighter. She eventually surrendered to U.S. and coalition forces in 2019.) *See* USAO_0139920.
- In the same meeting, Muthana stated to the CHS that she had stopped attending her masjid (mosque) because they had posted a letter that refuted and condemned ISIS on its website. Muthana and the CHS also further discussed Muthana's desire to marry a fighter. *See id.*
- On October 18, 2020, Muthana celebrated a recent ISIS-affiliated terrorist attack in France in which a man was decapitated, stating "Allahu Akbar! [God is great] . . . Subhana Wa Taala [may he be praised and exalted]. . . Accept him as a shaheed a lion in France! [T]he courage from this brother will reignite the courage in the other brothers!" *See* USAO_009390 - USAO_009393.

All of the above evidence is admissible as direct evidence of the charged offenses because it was part of the same course of conduct that led Muthana to attempt to travel overseas with Bradley to support ISIS and reflected her radicalization in the time preceding the instant offenses.

In the alternative, however, the Government will also offer such evidence to prove the defendants' "motive . . . intent, preparation, [and] plan" pursuant to Rule 404(b). Specifically, such evidence is admissible because it would prove, among other things, (1) that one of Muthana's "motive[s]" to commit the charged offenses was to escape the land of the "kuffar" (disbelievers) and support ISIS's efforts to carry out attacks, like the one in France that she praised; (2) that Muthana "intend[ed]" specifically to support ISIS through her efforts to find a husband online, her ultimate marriage to Bradley, and their joint efforts to travel overseas to make "hijra"; (3) that Muthana's course of conduct, including her conversations with the CHS, reflected a "plan" to leave the United States and support ISIS; and (4) that Muthana engaged in "preparation[s]" for this plan, including by finding a suitable husband who also supported ISIS.

In short, while the four categories of evidence described above constitute direct evidence of the charged offenses, they also fall squarely within the types of evidence that are admissible in the alternative pursuant to Rule 404(b). Accordingly, and as the Government will describe further in its motions *in limine*, it intends to offer such evidence at trial.

5. **Muthana's Post-Arrest Statement and *Bruton v. United States*, 391 U.S. 123 (1968)**

Consistent with the Court's instruction at the June 21, 2022 conference (Tr. at 15-17), the Government also hereby provides notice that certain of Muthana's post-arrest statements may implicate *Bruton*. *See Bruton*, 391 U.S. at 135-36 (1968) (admission of a non-testifying co-defendant's testimonial statements may violate the defendant's rights under the Confrontation Clause of the Sixth Amendment if the statements are 'powerfully incriminating' or 'devastating' to the defendant").

Following her arrest on or about March 31, 2022, Muthana voluntarily participated in a *Mirandized* interview, which was videorecorded, during which she stated the following, in substance and among other things:[1]

- Muthana had intended to travel with Bradley to Yemen, or another land which was under Islamic law.

---

[1] Bradley did not participate in a post-arrest interview.

- Bradley, not Muthana, organized their travel to Yemen, and the plan to take a cargo ship had been conceived of only recently.
- Bradley and Muthana met in January 2021 in an online chatroom that she declined to name.
- Muthana was not planning to return to the United States after she traveled to Yemen.
- Muthana's parents did not know that she married Bradley and would not have approved.
- Muthana and Bradley share the same religious beliefs.
- Muthana is still learning about Islam, but if there was a need for it, she would commit religious jihad, fight for ISIS, or kill Americans.

The Government produced this videorecorded statement to both Bradley and Muthana on or about May 24, 2021. *See* USAO_000024. Certain of these statements may implicate *Bruton*, given that they include references to Bradley. In the course of preparing for trial, should the Government determine that it intends to offer certain of these statements, the statements can be appropriately redacted, to the extent necessary, to address any *Bruton* concerns consistent with well-established practice in this Circuit. *See, e.g.*, *United States v. Jass*, 569 F.3d 47, 56 (2d Cir. 2009) (careful redaction of statement at issue to eliminate reference to co-defendant or replace the reference with a neutral identifier, along with an appropriate limiting instruction, can render statement properly admissible under *Bruton*). The Government respectfully proposes that it will, when it files its motions *in limine* in early September, identify any statements from Muthana's interview that it intends to offer at trial, and propose any corresponding redactions or otherwise modified versions of the statements to address *Bruton*, so that the issue can be fully briefed by the parties well in advance of trial and appropriate redactions crafted as necessary. To be clear, these statements do not, however, provide any basis for severance. *See, e.g.*, *United States v. Landji & Adamu*, 18 Cr. 601 (PGG) (S.D.N.Y.), Dkt. 460 at 7-14 (denying severance motion based on post-arrest statements of co-defendant, concluding that "[the co-defendant's] post-arrest statements can be redacted to ensure that [the defendant's] Sixth Amendment rights are not violated").

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /S/
      Andrew J. DeFilippis
      Jason A. Richman
      Kaylan E. Lasky
      Assistant United States Attorneys
      (212) 637-2231 / 2589 / 2315