M9C5mutP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                               21 Cr. 277 (PAE)

ARWA MUTHANA,

                Defendant.

------------------------------x

                                             September 12, 2022
                                             1:10 p.m.

Before:

                    HON. PAUL A. ENGELMAYER,

                                             U.S. District Judge


                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  KAYLAN E. LASKY
     Assistant United States Attorney

THE LAW OFFICES OF ONADOWAN & DELINCE, PLLC
     Attorneys for Defendant
BY:  CHRISTINE DELINCE
     -AND-
ADAMS & COMMISSIONG, LLP
BY:  KARLOFF C. COMMISSIONG

M9C5mutP

1          (Case called)

2          THE DEPUTY CLERK:  Counselors, starting at the front

3    table, please state your appearance for the record.

4          MS. LASKY:  Good afternoon, your Honor.  Kaylan Lasky

5    for the government.

6          THE COURT:  Good afternoon, Ms. Lasky.

7          For the defense?

8          MS. DELINCE:  Good afternoon, your Honor.  Christine

9    Delince for Ms. Muthana.

10          THE COURT:  Good afternoon, Ms. Delince.

11          MR. COMMISSIONG:  And Karloff Commissiong as well.

12    Good afternoon.

13          THE COURT:  Good afternoon to you.

14          And, good afternoon, Ms. Muthana.

15          THE DEFENDANT:  Good afternoon.

16          THE COURT:  You may all be seated.

17          Ms. Delince, it is nice to see you again.

18          MS. DELINCE:  Nice to see you too, Judge.

19          THE COURT:  I hope all is well with you.

20          MS. DELINCE:  Yes.  Thank you.

21          THE COURT:  Ms. Delince, I have been informed that

22    your client, today, wishes to plead guilty to Count One of the

23    indictment in this case pursuant to a plea agreement.  Is that

24    correct?

25          MS. DELINCE:  Yes, it is.

M9C5mutP

| | |
|---|---|
| 1 | THE COURT:  Ms. Muthana, is that correct? |
| 2 | THE DEFENDANT:  Yes. |
| 3 | MS. DELINCE:  I will ask you just to move the |
| 4 | microphone closer to you and kindly just keep your voice up. |
| 5 | Before I accept your guilty plea, I'm going to ask you |
| 6 | certain questions so that I can establish, to my satisfaction, |
| 7 | that you wish to plead guilty because you are guilty and not |
| 8 | for some other reason.  If you don't understand any of my |
| 9 | questions or you would like a further opportunity to consult |
| 10 | with your lawyers, will you please let me know? |
| 11 | THE DEFENDANT:  OK. |
| 12 | THE COURT:  Are you able to speak and understand |
| 13 | English? |
| 14 | THE DEFENDANT:  Yes. |
| 15 | THE COURT:  Mr. Smallman, would you kindly place |
| 16 | Ms. Muthana under oath? |
| 17 | THE DEPUTY CLERK:  Would you please rise and raise |
| 18 | your right hand. |
| 19 | (Defendant sworn) |
| 20 | THE COURT:  Do you understand that you are now under |
| 21 | oath, and that if you answer any of my questions falsely, your |
| 22 | answers to my questions may be used against you in another |
| 23 | prosecution for perjury? |
| 24 | THE DEFENDANT:  Yes. |
| 25 | THE COURT:  What is your full name? |

M9C5mutP

1              THE DEFENDANT:  Arwa Muthana.

2              THE COURT:  How old are you?

3              THE DEFENDANT:  30.

4              THE COURT:  How far did you go in school?

5              THE DEFENDANT:  Bachelors in nuclear medicine.

6              THE COURT:  In nuclear medicine?

7              THE DEFENDANT:  Uh-huh.

8              THE COURT:  Where did you obtain the bachelors from?

9              THE DEFENDANT:  University of Alabama at Birmingham.

10             THE COURT:  Have you ever been treated or hospitalized

11   for any mental illness?

12             THE DEFENDANT:  No.

13             THE COURT:  Are you now or have you recently been

14   under the care of a doctor or psychiatrist?

15             THE DEFENDANT:  No.

16             THE COURT:  Have you ever been hospitalized or treated

17   for addiction to any drugs or to alcohol?

18             THE DEFENDANT:  No.

19             THE COURT:  In the past 24 hours, have you taken any

20   drugs, medicine, or pills, or drunk any alcoholic beverages?

21             THE DEFENDANT:  No.

22             THE COURT:  Is your mind clear today?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand what is happening in

25   this proceeding?

M9C5mutP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Ms. Delince, do you have any doubt as to

3     your client's competence to plead at this time?

4          MS. DELINCE:  No, I do not.

5          THE COURT:  How about you, Ms. Lasky?

6          MS. LASKY:  No, your Honor.

7          THE COURT:  Based on Ms. Muthana's responses to my

8     questions, based on her demeanor as she appears before me,

9     based on counsel's independent assessment, and based on, I

10    might add, a long history with the case, I find that she is

11    competent to enter a plea of guilty at this time.

12         Ms. Muthana, have you had a sufficient opportunity to

13    discuss your case with your attorneys?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Have you had a sufficient opportunity to

16    discuss the particular charge to which you intend to plead

17    guilty, any possible defenses to that charge, and the

18    consequences of entering a plea of guilty?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Are you satisfied with your attorney's

21    representation of you including in connection with reaching a

22    plea agreement?

23         THE DEFENDANT:  Yes.

24         THE COURT:  I am now going to explain certain

25    constitutional rights that you have.  You will be giving up

M9C5mutP

1    these rights if you enter a plea of guilty.

2                Under the Constitution and laws of the United States,

3    you are entitled to a speedy and public trial by a jury on the

4    charges contained in the indictment.

5                Do you understand that?

6                THE DEFENDANT:  Yes.

7                THE COURT:  At that trial you would be presumed to be

8    innocent and the government would be required to prove you

9    guilty by competent evidence and beyond a reasonable doubt

10   before you could be found guilty.  You would not have to prove

11   that you were innocent.  And, a jury of 12 people would have to

12   agree, unanimously, that you were guilty.

13               Do you understand that?

14               THE DEFENDANT:  Yes.

15               THE COURT:  At that trial, and at every stage of your

16   case, you would be entitled to be represented by an attorney

17   and if you could not afford one, one would be appointed to

18   represent you free of charge.

19               Do you understand that?

20               THE DEFENDANT:  Yes.

21               THE COURT:  During a trial the witnesses for the

22   government with have to come to court and testify in your

23   presence and your lawyer could cross-examine the witnesses for

24   the government, object to evidence offered by the government,

25   and if you desired, issue subpoenas, offer evidence, and compel

M9C5mutP

1   witnesses to testify on your behalf.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  At a trial, although you would have the

5   right to testify if you chose to do so, you would also have the

6   right not to testify and no inference or suggestion of guilt

7   could be drawn from the fact that you did not testify if that

8   was what you chose to do.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  At trial, the government would have to

12   prove each and every part or element of the charge beyond a

13   reasonable doubt for you to be convicted of that charge.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you also understand that if you were

17   convicted at a trial, you would then have the right to appeal

18   that guilty verdict?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Even at this time, right now, even as you

21   are in the process of entering this guilty plea, you have the

22   right to change your mind, plead not guilty, and go to trial.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  If you plead guilty and I accept your

M9C5mutP

1  plea, you will give up your right to a trial and the other

2  rights that I have just described.  There will be no trial and

3  I will enter a judgment of guilty and sentence you on the basis

4  of your guilty plea after considering the submissions relating

5  to the sentencing that I receive from you, your lawyer, and the

6  government, as well as a presentence report prepared by the

7  probation department.

8           Do you understand that?

9           THE DEFENDANT:  Yes.

10           THE COURT:  If you plead guilty, you will also have to

11  give up your right not to incriminate yourself because I will

12  ask you questions about what you did in order to satisfy myself

13  that you are guilty, as charged.

14           Do you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Ms. Muthana, have you received a copy of

17  the indictment containing the charges against you?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Have you read it?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Have you had an opportunity to discuss the

22  indictment with your attorneys?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand that you are charged in

25  Count One with attempting to provide material support or

M9C5mutP

resources to a designated foreign terrorist organization in
violation of Title 18, United States Code, Sections 2339(b) and
(2)?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Lasky, would you kindly set out the
elements of that offense?

MS. LASKY:  Yes, your Honor.

Under Title 18, United States Code Section 2339(b) and
Section 2, the government must prove the following elements
beyond a reasonable doubt:

First, the defendant knowingly attempted to provide
material support or resources to a designated foreign terrorist
organization, in this case ISIS;

Two, the defendant knew that the organization had been
designated as a foreign terrorist organization and/or that it
engaged in terrorist activity or terrorism; and

Three, at least one of the jurisdictional requirements
of Section 2339(b) subsection D is met.  Those jurisdictional
requirements include but are not limited to the following:
Subsection (d)(1)(A), that an offender is a national of the
United States; and subsection (d)(1)(D), that the offense
occurred, in whole or in part, within the United States.

The government must also prove that venue is within
the Southern District of New York by a preponderance of the
evidence.

M9C5mutP

1          THE COURT:  Thank you, Ms. Lasky.

2          Ms. Delince, are you in agreement that those are in

3    fact the elements of the offense?

4          MS. DELINCE:  Yes.

5          THE COURT:  Ms. Muthana, did you hear and understand

6    Ms. Lasky as she set out the elements of the offense?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that were you to go to

9    trial, the government would have to prove each of those

10   elements beyond a reasonable doubt and the government would

11   also have to prove, by a preponderance of the evidence, that

12   venue is proper in this district which includes Manhattan and

13   the Bronx?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that the maximum

16   possible penalty for this offense is 20 years in prison?

17         THE DEFENDANT:  Yes.

18         THE COURT:  You understand the maximum fine for this

19   offense is the greatest of $250,000, twice the gross pecuniary

20   gain derived from the offense or twice the gross pecuniary loss

21   to a person other than you as a result of the offense?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that for pleading guilty

24   to this crime you may receive up to a lifetime term of

25   supervised release?

M9C5mutP

1           THE DEFENDANT:  Yes.

2           THE COURT:  Supervised release means that you will be

3      subject to monitoring when you are released from prison.  There

4      are terms of supervised release with which a person must

5      comply.  If you don't comply with them, you can be returned to

6      prison without a jury trial for all or part of the term of

7      supervised release imposed by the Court.  Under those

8      circumstances, you would not be given any credit towards that

9      term for the time you had served in prison as a result of your

10     sentence for this crime, nor will you necessarily be given any

11     credit towards that term for any time you had spent on

12     post-release supervision.

13          Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  For pleading guilty to this crime you will

16     also be required to pay a mandatory $100 special assessment.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  For pleading guilty to this crime you may

20     be required to pay restitution to any person injured as a

21     result of your criminal conduct.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  For pleading guilty to this crime you may

25     be compelled to forfeit any and all property constituting and

M9C5mutP

1    derived from proceeds obtained by your criminal conduct.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you also understand that if I accept

5    your guilty plea and adjudge you guilty, that may deprive you

6    of valuable civil rights such as the right to vote, the right

7    to hold public office, the right to serve on a jury, and the

8    right to possess any kind of firearm?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Are you a United States citizen?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Under the current law there are sentencing

13   guidelines as well as other factors set forth in the sentencing

14   statutes that Judges must consider in determining a sentence.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have you spoken with your attorneys about

18   the sentencing guidelines and those other factors?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that the Court will not

21   be able to determine the guideline range that will form one

22   part of my determination of what a reasonable sentence will be

23   in your case until after a presentence report has been prepared

24   and until after you and your attorneys and the government all

25   have had an opportunity to challenge any of the facts reported

M9C5mutP

1    there by the probation department?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that even though the

4    parties have agreed in the plea agreement that the sentencing

5    guidelines call for a sentence of 240 months' imprisonment --

6    indeed, the parties agree that the guidelines would call for a

7    higher sentence than that but for the statutory maximum of 240

8    months' imprisonment -- do you understand that the parties'

9    assessment of what the sentencing guidelines call for is not

10   binding on the probation department and it is not binding on

11   the Court?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that even after the

14   Court has determined what guideline range applies to your case,

15   the Court has the discretion, under the current law, to impose

16   a sentence that is higher or lower than the one recommended by

17   the guidelines, save, of course, that the Court cannot impose a

18   sentence above the statutory maximum of 240 months in prison?

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that if your attorneys

22   or anyone else has attempted to predict what your sentence will

23   be, their prediction could be wrong?  No one, not your

24   attorneys, not the government's attorney -- no one -- can give

25   you any assurance of what your sentence will be because I'm

M9C5mutP

1    going to decide your sentence and I'm not going to do that now

2    and I really can't do that now.  Instead, I'm going to wait

3    until I receive the presentence report prepared by the

4    probation department, I'm going to wait until I receive what I

5    know will be thoughtful sentencing submissions from the

6    government and the defense, I'm going to read all of those very

7    carefully, I'm going to make my own independent calculation of

8    what the sentencing guidelines recommend.  Most of all, I'm

9    going to determine what a just and fair sentence is for you

10   based on all of the factors contained in our sentencing statute

11   which is known as Section 3553(a).

12              Do you understand all of that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Have you discussed these issues and the

15   overall sentencing process with your lawyers?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Even if your sentence is different from

18   what your lawyers or anyone else has told you it might be, even

19   if it is different from what you expect, even if it is

20   different from the guideline range or guideline recommendation

21   that's calculated in the plea agreement, you would still be

22   bound by your guilty plea and you would not be allowed to

23   withdraw your plea of guilty.

24              Do you understand that?

25              THE DEFENDANT:  Yes.

M9C5mutP

1          THE COURT:  Has anyone threatened you or anyone else,

2     or forced you in any way to plead guilty?

3          THE DEFENDANT:  No.

4          THE COURT:  Has there been a plea agreement entered

5     into between the government and the defense?

6          MS. DELINCE:  Yes, there has been.

7          THE COURT:  Ms. Muthana, is that correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Counsel have handed up a plea agreement

10     which bears the typed date of August 19th, 2022.  On the final

11     page, Ms. Lasky, I see here indications of the electronic

12     signatures of I guess it is you, Mr. Richmond, and Mr. Wirshba,

13     and George Turner, the Chief of the National Security and

14     International Narcotics Unit.  Are all those slash signs meant

15     to indicate the electronic signatures of those people?

16          MS. LASKY:  Yes, your Honor.  I didn't realize

17     Mr. Wirshba is on there, that should have been Mr. DeFilippis.

18     But, in any event, yes, your Honor.

19          THE COURT:  The important line is one of the line

20     AUSAs, in particular you, the slash sign means you have signed

21     this?

22          MS. LASKY:  Correct, your Honor.

23          THE COURT:  And Mr. Turner as well?

24          MS. LASKY:  Correct, your Honor.

25          THE COURT:  And, Ms. Delince, I see your signature

M9C5mutP

1      dated August 30th; is that your signature?

2              MS. DELINCE:  Yes, Judge.

3              THE COURT:  Ms. Muthana, I see here your signature

4      dated August 30th; is that your signature?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did you read this agreement before you

7      signed it?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Did you discuss it with your attorneys

10     before you signed it?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you believe that you understood the

13     agreement at the time that you signed it?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Did you willingly sign this agreement?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Did anyone force you to sign it?

18             THE DEFENDANT:  No.

19             THE COURT:  Do you have any agreement with the

20     government about your plea or about your sentence that's been

21     left out, that's been omitted from this written agreement?

22             THE DEFENDANT:  No.

23             THE COURT:  Ms. Lasky, would you kindly summarize the

24     material terms, the important terms of the agreement?

25             MS. LASKY:  Yes, your Honor.

M9C5mutP

1        The Court has already spoken as to the maximum and

2    minimum terms of imprisonment and supervised release terms.  I

3    won't go back over those.  In addition, the plea agreement does

4    state that the defendant will not be further prosecuted

5    criminally by this office, meaning the United States Attorney's

6    office for the Southern District of New York, for attempting to

7    provide material support or resources to a designated foreign

8    terrorist organization, that being ISIS, from in or about May

9    2020, up to and including March 2021, as charged in Count One,

10   and at the time of sentencing the government will move to

11   dismiss any open counts against the defendant.

12       There is a provision that states that the defendant

13   admits the forfeiture allegation.  Additionally, it sets forth

14   the guidelines, that being an offense level of 37, Criminal

15   History Category VI, which, when taking into account the

16   statutory requirements, results in a guidelines sentence of 240

17   months' imprisonment, your Honor, and an applicable fine range

18   of $40,000 to $400,000.

19       The parties additionally agree that neither a downward

20   nor an upward departure from this guideline sentence is

21   warranted, although it is true that either party may seek a

22   sentence different than the stipulated guideline sentence based

23   on, for example, the factors set forth in Section 3553(a).

24   Nothing in this agreement limit the rights of the parties to

25   set forth any facts under Section 3553(a).  Neither the

M9C5mutP

1    probation office or the Court is bound by the guidelines

2    stipulation, as your Honor stated.

3            It is understood that the sentence to be imposed is to

4    be determined solely by Court, as your Honor stated.

5            Additionally, the defendant agrees not to violate,

6    direct appeal, nor bring a collateral challenge of any sentence

7    at or below the stipulated guidelines sentence of 240 months'

8    imprisonment and the government will not appeal a sentence at

9    the stipulated guideline sentence.

10           The defendant further agrees not to appeal or bring a

11   collateral challenge of any term of supervised release, that

12   is, less than or equal to the statutory maximum.  The defendant

13   also agrees not to appeal or bring a collateral challenge of

14   any fine that is less than or equal to $400,000 and the

15   government agrees not to appeal a fine that is greater than or

16   equal to $40,000.

17           And those I would say, your Honor, are the most

18   important terms of the agreement.

19           THE COURT:  Thank you, Ms. Lasky.

20           Ms. Delince, are you in agreement with Ms. Lasky's

21   summary of the terms that she covered?

22           MS. DELINCE:  Yes.

23           THE COURT:  And, Ms. Muthana, did you hear and

24   understand Ms. Lasky as she summarized some of the terms of the

25   plea agreement?

M9C5mutP

1          THE DEFENDANT:  Yes.

2          THE COURT:  I am just going to highlight one for you

3     now.  Do you understand that, under the agreement, you are

4     giving up your right to appeal or otherwise challenge your

5     sentence so long as I don't sentence you to more than 240

6     months' imprisonment?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anybody made any promise or done

9     anything other than what is contained in the plea agreement to

10    induce you to plead guilty?

11         THE DEFENDANT:  No.

12         THE COURT:  Has anyone made a promise to you as to

13    what your sentence will be?

14         THE DEFENDANT:  No.

15         THE COURT:  Do you still wish to plead guilty pursuant

16    to this agreement?

17         THE DEFENDANT:  Yes.

18         THE COURT:  I am now up to the point where I am going

19    to ask you in a moment to tell me, in your own words, what it

20    is that you did that makes you believe you are guilty of the

21    charge in the indictment.  Before I do, though, let me ask

22    Ms. Delince whether your client will be reading aloud from a

23    written statement?

24         MS. DELINCE:  She will be reading aloud from a written

25    statement, Judge.

M9C5mutP

1          THE COURT:  Very well.  That's completely fine.  I

2    just need to make sure, Ms. Muthana, that before you do that,

3    that what you are about to read from is something you have

4    already carefully reviewed and you are confident, because you

5    are the one here who knows the facts, you are confident that

6    everything you are about to read to me is accurate.

7          Is that so?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Go ahead, nice and slowly, so the court

10    reporter can get down everything you have to say?

11          THE DEFENDANT:  From May 2020 through March 2021, in

12    Manhattan and elsewhere, I attempted to provide services to

13    ISIS which I knew to be a designated foreign terrorist

14    organization.  I attempted to provide my personal services to

15    ISIS by attempting to board a boat headed to the Middle East so

16    that I could join ISIS and volunteer my services and fight.

17          THE COURT:  Thank you.

18          Where in New York City, where did that take place?

19          THE DEFENDANT:  In Manhattan.

20          THE COURT:  When you did these acts, did you know that

21    what you were doing was wrong?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Did you know that you were committing a

24    crime?

25          THE DEFENDANT:  Yes.

M9C5mutP

1          THE COURT:  Ms. Lasky, do you agree that there is a

2     sufficient factual predicate for a guilty plea?

3          MS. LASKY:  Yes, your Honor.

4          THE COURT:  Ms. Delince?

5          MS. DELINCE:  Yes.

6          THE COURT:  Ms. Delince, do you know of any valid

7     defense that would prevail at trial, or any reason why your

8     client should not be permitted to plead guilty?

9          MS. DELINCE:  No, Judge.

10          THE COURT:  Ms. Muthana, are you pleading guilty today

11     voluntarily and of your own free will and because you are, in

12     fact, guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Ms. Lasky, can the government counsel

15     represent that had the case gone to trial, it had sufficient

16     evidence of each element to establish a conviction?

17          MS. LASKY:  Yes, your Honor.

18          THE COURT:  Ms. Muthana, because you acknowledge that

19     you are in fact guilty as charged in the indictment, because I

20     am satisfied that you know of your rights including your right

21     to go to trial, because I'm satisfied that you are aware of the

22     consequences of your guilty plea including the sentence that

23     may be imposed, and because I find that you are voluntarily

24     pleading guilty, I accept your guilty plea and enter a judgment

25     of guilty on the one count to which you pled guilty.

M9C5mutP

1          Now, the next step in your case is going to involve

2     the sentencing process and I am going to ask you to pay close

3     attention to what I am about to say.  The probation department

4     is going to want to interview you in connection with the

5     presentence report that it prepares.  If you choose to speak

6     with the probation department, please, make sure anything you

7     say to them is truthful and accurate.  I read those reports

8     very carefully along with the parties' sentencing submissions.

9     They are very important to my assessment of what a just and a

10    reasonable sentence is in the particular case.  You and your

11    counsel have a right to examine the report and to comment on it

12    at the time of sentencing.  I urge you to do so, to discuss it

13    and read it with your attorneys, before sentencing.  If there

14    are any mistakes in the report, please, point them out to your

15    lawyers so that they can bring them to my attention before

16    sentencing.

17          Will you agree to do that?

18          THE DEFENDANT:  I agree.

19          THE COURT:  Ms. Delince, is this a case in which you

20    are seeking an expedited sentence?

21          MS. DELINCE:  No, Judge.

22          THE COURT:  So, for sentencing, how about February the

23    1st, at 10:30.

24          MS. DELINCE:  Judge, can we actually have February

25    6th?

M9C5mutP

1          THE COURT:  Let me check.  I note that Mr. Bradley is

2    set for February 2nd.

3          MS. DELINCE:  Right, he is on the 2nd.  By Friday?

4          THE COURT:  The question is, and I realize that there

5    may be different views among different pairs of defendants, is

6    there a view as to whether you want the sentence here to be

7    before or after Mr. Bradley's?

8          MS. DELINCE:  After Mr. Bradley's.

9          THE COURT:  Admittedly, I didn't ask him, but sobeit.

10   Let me check.  Ms. Delince, I have a civil trial scheduled for

11   the week of February 6 but how about February 3rd?  That ends

12   up being a day after Mr. Bradley.

13         MS. DELINCE:  The 3rd is fine, Judge.

14         THE COURT:  All right.  2:00 p.m. on February 3rd.

15         MS. DELINCE:  Yes, that's fine.

16         THE COURT:  Ms. Lasky, does that work for you as well?

17         MS. LASKY:  Yes, your Honor.

18         THE COURT:  I will put sentencing down for February

19   3rd at 2:00 p.m.

20         Ms. Delince, you must arrange for your client to be

21   interviewed by the probation department within the next two

22   weeks.  Government, you must provide your case summary to the

23   probation department within the next two weeks.  Defense

24   submissions, in connection with sentencing, are due two weeks

25   before sentencing.  The government's submission is due one week

M9C5mutP

1   before.

2                   Anything further from the government?

3                   MS. LASKY:  No.  Thank you, your Honor.

4                   THE COURT:  Anything further from the defense?

5                   MS. DELINCE:  Nothing.  Thank you, Judge.

6                   THE COURT:  Government, I will say this to you and I

7   will ask you just to make this known to counsel for Defendant

8   Bradley, but now that both defendants have pled guilty, I know

9   that one of the things I have always tried to keep an eye on at

10  sentencing is relative culpability.  I have no visibility in

11  this case as to how that factor plays out.  I am mindful that

12  the defendants will be sentenced in fairly short order.  It

13  would be important to me that all sentencing submissions engage

14  with that issue so that I have the guidance of all concerned

15  about that issue.

16                  MS. LASKY:  Yes, your Honor.

17                  THE COURT:  So, putting that out there is something of

18  interest so that it can be thoughtfully addressed.

19                  With that, we stand adjourned.  Thank you.  And I will

20  now officially cancel the trial now that both defendants and

21  all conferences between now and sentencing, now that both

22  defendants have pled guilty.

23                  Thank you.  We stand adjourned.

24                                    o0o

25

M9C5mutP